# 14-1752-cv

## In the United States Court of Appeals
## for the Second Circuit

———————————————————————

Paul D. Ceglia,

Plaintiff-Appellant,

v.

Eric H. Holder, Jr., as Attorney General of the United States,
Preetinder S. Bharara, as U.S. Attorney for the Southern District of
New York, Janis M. Echenberg, as representative of the U.S.
Attorney's Office for the Southern District of New York,
Christopher D. Frye, as representative of the U.S. Attorney's Office
for the Southern District of New York,

Defendants-Appellees.

———————————————————————

On Appeal from the United States District Court
For the Western District of New York

———————————————————————

## BRIEF FOR DEFENDANTS-APPELLEES

———————————————————————

WILLIAM J. HOCHUL, JR.
United States Attorney
*Attorney for Defendants-Appellees*
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5700, ext. 15867

MARY E. FLEMING,
Assistant United States Attorney
*of Counsel*

# TABLE OF CONTENTS

Page No.

Table of Authorities ........................................................................... i

Statement of Jurisdiction .................................................................. 1

Combined Statement of the Case and Statement of Facts ................................ 2

    A.   WDNY Facebook Action – April 2003-May 2013 ................ 3
    B.   SDNY Criminal Prosecution – October 2012-March 2013 .... 5
    C.   WDNY Holder Action – March 2013-August 2013 .............. 7
    D.   SDNY Criminal Prosecution –
        November 2013-March 2014 ................................................ 10
    E.   WDNY Facebook and Holder Actions – March 2014 .......... 13

Issue Presented for Review ........................................................... 15

Summary of Argument ................................................................... 15

Argument........................................................................................ 16

    The District Court Properly Dismissed the Holder Action ......... 16

    A.   Governing Law and Standard of Review......................... 16
    C.   Discussion.................................................................... 17

Conclusion...................................................................................... 24

Certificate of Compliance .......................................................Unnumbered

Affidavit of Service..................................................................Unnumbered

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................. 16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................... 16

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ........................................................................................................ 1, 8

*Buczek v. Bruce*, WDNY Docket No. 09-CV-11293, 2011 WL 1894769 (W.D.N.Y. May 19, 2011).................................................................................. 18

*California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972).......... 9

*Ceglia v. Zuckerberg*, 2013 WL 1208558 (WDNY March 26, 2013) ................... 5

*Christoforu v. United States*, 842 F. Supp. 1453 (S.D.Fla 1994) ........................ 19

*Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987) .......................................18, 19

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) ........................................................................................................... 9

*Famous Horse Inc. v. 5th Avenue Photo Inc.*, 624 F.3d 106 (2d Cir. 2010)........... 16

*Fenner v. Boykin*, 271 U.S. 240 (1926) ............................................................. 17

*Hoblock v. Albany County Board Of Elections*, 422 F.3d 77 (2d Cir. 2005) .......... 17

*Illinois ex rel. Madigan v. Telemarketing Associates, Inc.*, 538 U.S. 600 (2003) ..... 12

*Juluke v. Hodel*, 811 F.2d 1553 (D.C.Cir. 1987) .........................................18, 19

i

*Lo Tes Co., Ltd. v. Hon Hai Precision Industry Co.*, 753 F.3d 395 (2d Cir. 2014)....................................................................................... 16

*Miranda v. Gonzalez*, 173 Fed.Appx. 840, 2006 WL 592928 (D.C.Cir. Feb.12, 2006) ....................................................................... 18

*Norton v. United States*, 92 F.2d 753 (9th Cir. 1937)......................................... 11

*Tom Doherty Associate, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27 (2d Cir. 1995)........................................................................... 17

*Traficant v. United States*, No. 4:02CV188, 2002 WL 553724 (N.D. Ohio Feb. 1, 2002) ...................................................................... 18

*United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965) ................... 9

*United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992) ......................................... 11

*United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002), .......................... 11

*United States v. Rodolitz*, 786 F.2d 77 (2d Cir. 1986) ...................................11, 12

*United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2004) ..................................... 12

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003)......................................... 19

*Younger v. Harris*, 401 U.S. 37 (1971) ................................................17, 18, 23

ii

## FEDERAL STATUTES

18 U.S.C. § 1001(b) ................................................................ 21

18 U.S.C. § 1341 .............................................................. 5, 8

18 U.S.C. § 1342 ................................................................. 5

28 U.S.C. § 1291 ................................................................. 1

28 U.S.C. § 1331 ................................................................. 1

## FEDERAL RULES

Fed. R. App. P. 4(a) ............................................................ 2

Fed. R. Civ. P. 12(h)(3) ...................................................... 19

iii

## STATEMENT OF JURISDICTION

Plaintiff-Appellant, Paul D. Ceglia ("Ceglia"), brought this suit in the Western District of New York ("WDNY") seeking a preliminary and permanent injunction against the Defendants-Appellees who are the Attorney General of the United States and prosecutors in the Southern District of New York ("SDNY") asserting that his rights pursuant to the First Amendment have been violated by a criminal prosecution against him pending in the United States District Court for the SDNY. (A[1] 315-329). Ceglia asserted that the WDNY district court had jurisdiction under 28 U.S.C. § 1331 because the matter in controversy alleged constitutional violations by federal employees.[2]

Assuming without conceding that the district court had jurisdiction on the grounds asserted by Ceglia, this Court would have jurisdiction under 28 U.S.C. § 1291 following entry by the district court of an order dismissing Ceglia's complaint and denying injunctive relief regarding the SDNY criminal

---

[1] References herein to "A" are to pages in the Appendix filed by Ceglia.

[2] NB: Although the nature of the allegations sound more like those associated with an action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Ceglia did not bring the suit as a *Bivens* action, nor could he, since what he seeks is injunctive relief, not monetary damages.

prosecution, entered on March 26, 2014. Ceglia filed a timely notice of appeal on May 21, 2014, pursuant to FED. R. APP. P. 4(a).

## COMBINED STATEMENT OF THE CASE
## AND STATEMENT OF FACTS

Ceglia's involvement in three separate but interrelated federal cases is critical to an understanding of this case. In quick summary:

In June 2010, Ceglia brought a civil action founded on a claim of 50 percent ownership in Facebook, Inc., seeking financial remedies against Mark Zuckerberg and Facebook (the "Facebook Action"). In March 2012, Zuckerberg and Facebook moved to dismiss the complaint.

In October 2012, in the SDNY district court, the government initiated a criminal prosecution against Ceglia based on allegations that he committed mail and wire fraud in pursuit of his claims in the Facebook Action (the "Criminal Prosecution"). Thereafter in March 2013, the SDNY district court denied Ceglia's motion to change venue to the WDNY.

In March 2013, while the motion to change venue was pending in the Criminal Prosecution, Ceglia filed a second civil case in the WDNY, the "Holder Action," this time seeking to enjoin the SDNY Criminal Prosecution.

The Holder Action is the subject of this appeal. The Holder Action defendants opposed the injunction and in May 2013, moved to dismiss the complaint.

In November 2013, Ceglia moved to dismiss the SDNY indictment. In early March 2014, the SDNY district court denied Ceglia's motion to dismiss the SDNY indictment. Approximately two weeks later, the WDNY district court dismissed the Facebook Action and also dismissed the Holder Action finding no basis to enjoin the Criminal Prosecution pending in the SDNY district court.

Currently before this Court are two appeals, one from the Facebook Action and one from the Holder Action. The Criminal Prosecution is pending trial in the SDNY. This brief address only the issues on appeal in the Holder Action.

## A.    WDNY Facebook Action–April 2003-May 2013

On April 28, 2003, Ceglia entered into a contract with Zuckerberg, then a student at Harvard University, in which Zuckerberg agreed to perform certain programming work for Ceglia and StreetFax.com, an online business operated by Ceglia that provided pictures and other information related to street intersections throughout the country to insurance adjusters. (A 99-100,

3

206-208). In the contract they signed in Boston, Massachusetts in April, 2003, Ceglia agreed to pay Zuckerberg a fee for his work on the StreetFax.com website. (A 99-100, 207-209).

In the Facebook Action,[3] Ceglia claimed that the contract he entered into with Mark Zuckerberg granted him 50 percent ownership in Facebook. (*See* A 19 and *see* WDNY Docket No. 10-cv-569, Entry 1). In support of his claim, Ceglia attached to his amended complaint a copy of an alleged contract and described and cited e-mails allegedly exchanged regarding the deal. (*See* A 23 and *see* WDNY Docket No. 10-cv-569, Entry 39). Ceglia sought a declaratory judgment enforcing the purported contract, and asserted causes of action based upon breach of fiduciary duties, constructive and actual fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing. (*Id.*).

On March 26, 2012, Zuckerberg and Facebook filed a motion to dismiss and motion for judgment on the pleadings after extensive discovery and expert

---

[3] In June 2010, Ceglia initiated the Facebook Action in the Supreme Court for the State of New York, Allegany County. The case was subsequently removed to the United States District Court for the Western District of New York under its Docket No. 10-cv-569. (*See* A 19). On April 11, 2011, Ceglia filed an amended complaint. (*See* A 23).

4

analysis of the purported contract and supporting e-mails. (*See* A 49 and *see* WDNY Docket No. 10-cv-569, Entry 318). The motion to dismiss asserted that the contract was a forgery such that Ceglia, by relying on the contract in pursuing his claims, was perpetrating a fraud on the court. (*See id.*). On March 26, 2013, the Magistrate Judge issued a lengthy Report and Recommendation ("R&R") recommending dismissal of the Facebook Action because the purported contract (referred to as the "Work for Hire document") is a recently created fabrication and on account of Ceglia's spoliation of evidence. (*Ceglia v. Zuckerberg*, 2013 WL 1208558 (WDNY March 26, 2013)). On April 16, 2013, Ceglia filed objections to the R&R (A 140-198), and on May 6, 2013, Zuckerberg and Facebook filed a reply to Ceglia's objections (*see* A 79 and WDNY Docket No. 10-cv-569, Entry 657).

## B.   SDNY Criminal Prosecution – October 2012-March 2013

On October 26, 2012, following the filing of a criminal complaint, Ceglia was arrested and on November 26, 2012, the Grand Jury returned an indictment charging Ceglia with violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1342 (wire fraud). (A 98-106 (Indictment) and *see* SDNY Docket No. 12-cr-876, Entry 1 (Complaint), and Entries dated October 25, 26,

5

and 31, 2012). The SDNY sealed complaint and indictment alleges that, sometime after 2003, as part of his scheme to defraud, Ceglia doctored or otherwise fraudulently converted the contract that he had with Zuckerberg concerning programming work for StreetFax.com to make it appear as though Zuckerberg had agreed to provide Ceglia with at least a 50 percent interest in Facebook. (A 99-100, A 207-209). The first page of the purported contract contained language giving Ceglia "a half interest (50%) in the software, programming language and business interests" derived from the expansion of "The Face Book" or "The Page Book." (A 245). The second page of the purported contract contained the signatures of Ceglia and Zuckerberg. (A 246). Moreover, the indictment charges, that to further his scheme, Ceglia manufactured evidence to support his false ownership claim, including creating e-mail communications he purportedly had with Zuckerberg. (A 100). The purported e-mails allegedly transmitted between July 2003, and July 2004, via Zuckerberg's Harvard e-mail account, reflect conversations between Ceglia and Zuckerberg about the design and functionality of "The Face Book" website, as well as ways to generate income from its expansion. (A 209-210). The purported e-mails also reflect conversations in which Zuckerberg offered

6

Ceglia money to "repair [their] business relationship." (A 210). Additionally, the indictment alleges that Ceglia destroyed certain evidence that was inconsistent with his false claim. (A 100).

In January, 2013, Ceglia filed a motion for a change of venue which the government opposed on several grounds, including that, notwithstanding Ceglia's residence in Western New York, that he transmitted documents to his Manhattan-based attorneys and that through the attorneys he continued the fraud which culminated in the service of the civil complaint in the Facebook Action from Manhattan. (*See* SDNY Docket No. 12-cr-876, Entry 21, pp. 7-15). On March 13, 2013, the SDNY district court denied Ceglia's motion for a change of venue to the WDNY. (*See id.*, Minute Entry dated March 13, 2013).[4]

## C. WDNY Holder Action – March 2013–August 2013

While his motion to change venue for the criminal prosecution from the SDNY to the WDNY was pending, on March 11, 2013, Ceglia filed a second civil complaint. (A 83-93). Ceglia filed the complaint, not in the SDNY, but in the WDNY against the Attorney General of the United States and SDNY prosecutors asking that the district court "enjoin the Government from

---

[4] Although transcribed, the transcript does not appear to have been filed.

continuing to violate Plaintiff's First Amendment Rights" and order that the government discontinue the SDNY Criminal Prosecution. (*Id.*). Ceglia also asked that the district court "Declare the Mail and Wire Fraud Statutes, § 1341 and § 1343, as applied, to be void as unconstitutional." (A 91). Additionally, Ceglia filed a motion for a temporary restraining order and preliminary injunction. (A 94-139).

The WDNY district court held oral argument on the motions for a temporary restraining order and preliminary injunction on May 10, 2013. (*See* A 8, Entry 44). At the hearing the government noted that although he could, Ceglia had not filed a motion to dismiss the SDNY indictment and emphasized that it was unheard of for a defendant to bring a civil proceeding in another jurisdiction to enjoin a criminal prosecution when he had available the legal remedy of filing a motion to dismiss in the district in which the criminal proceeding was pending. (A 302-305). The district court reserved decision on Ceglia's motions. (A 307).

Shortly thereafter, on May 31, 2013, the government filed a motion to dismiss the Holder Action in which it asserted that there was no precedent for the relief sought, that a constitutional tort claim under *Bivens* was not the

appropriate means of challenging a pending criminal prosecution, and that neither the First Amendment nor the *Noerr-Pennington*[5] doctrine provided Ceglia with immunity. (*See* A 8, Entry 46, and A 309-314). Rather than responding to the motion to dismiss, Ceglia filed his first amended complaint on June 21, 2013 (after having received an enlargement of time to respond to the motion to dismiss). (A 315-329).[6] On July 26, 2013, the government filed a motion to dismiss Ceglia's first amended complaint. (A 330-331). On August 30, 2013, Ceglia filed opposition to the motion to dismiss. (*See* A 9-10, Entry 60).[7]

---

[5] *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135-38 (1961) (establishing antitrust immunity for petitions to state legislature); *see also United Mine Workers of America v. Pennington*, 381 U.S. 657, 670 (1965) (extended *Noerr* immunity to petitions of public officials); and *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (extended *Noerr-Pennington* immunity to right of access to courts).

[6] The first amended complaint raised one new claim pursuant to the Seventh Amendment (A 326-327). On appeal, Ceglia appears to have abandoned the claim that the prosecution in the SDNY has deprived him of his right to a jury trial in the WDNY.

[7] Additionally, on January 2, 2014, Ceglia filed a motion to supplement the Holder Action record to add the declarations of Ceglia's experts from the Criminal Prosecution, as well as the SDNY prosecutor's expert report. (*See* A 10, Entry 61). On January 22, 2014, without hearing from the government, the district court granted Ceglia's motion to supplement the record and the supplementation was so filed. (A 332-401). The government filed a response to

**D.     SDNY Criminal Prosecution – November 2013-March 2014**

On November 27, 2013, approximately one year after the criminal indictment was filed, and after the R&R recommending dismissal of the Facebook Action was filed, and while the Holder Action was pending, Ceglia filed a motion to dismiss the SDNY indictment. (SDNY Docket No. 12-cr-876, Entry 35). Ceglia argued that his First Amendment speech and petition rights were violated, that false claims in litigation documents cannot provide a basis for a prosecution for mail or wire fraud, and assuming that both he and Zuckerberg were aware of the alleged fraudulent misrepresentations that Ceglia had no "intent to deceive." (*See id.,* pp. 3-6). The SDNY prosecutors responded to Ceglia's motion to dismiss the indictment on January 24, 2014. (*See id.*, Entry 38).

On March 7, 2014, the SDNY district court denied Ceglia's motion to dismiss the indictment. (*See id.*, Entry 42). In relevant part, that court held:

> A defendant faces a high standard in seeking to dismiss an indictment. . . .

---

the new evidence in which, among other things, it advised the WDNY district court of the pendency of Ceglia's motion to dismiss the SDNY indictment. (A 402-412).

10

Mr. Ceglia raises four arguments in support of his motion to dismiss. I'll address each one in turn.

First, Ceglia contends that false claims in litigation documents cannot form the basis for mail and wire fraud charges. In support of this argument, Ceglia cites to several civil cases in which courts rejected a plaintiff's ability to use mail and wire fraud as a predicate offense for a civil RICO claim, when a defendant's only alleged fraud was to perpetrate false litigation. I do not find these civil cases persuasive in determining whether to dismiss the indictment.

The only criminal case the defendant cites to in this regard is *United States v. Pendergraft*, [297 F.3d 1198, 1209 (11th Cir. 2002),] or at least the main case the defendant cites to . . . . In that case, however, the court only commented on this issue in *dicta*. The defendants' mail fraud conviction was vacated on other grounds. As the government notes, in the Second Circuit, convictions for mail and wire fraud have been upheld in similar circumstances. *United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992); *United States v. Rodolitz*, [786] F.2d 77 (2d Cir. 1986). I will note, however, that in those cases, the defendants' schemes to defraud at least initially included the mailing or transmission of fraudulent documents in a nonlitigation context.

In his reply briefs, Ceglia argues that the judicial function exception to the False Statements Act, 18 U.S.C. Section 1001, applies to mail and wire fraud. Congress specifically codified that exception in the False Statements Act, and I have found no authority, nor has Ceglia cited any, extending its application to other fraud statutes, specifically mail and wire fraud.

Second, Ceglia argues that he could have no "intent to deceive" when Zuckerberg was aware of Ceglia's misrepresentations and could not possibly be deceived by them. Ceglia supports this proposition with *Norton v. United States*, 92 F.2d 753 (9th Cir. 1937)

11

and *Pendergraft* out of the Eleventh Circuit. While those cases are interesting and persuasive, they are not binding on this Court.

The government argues that even if Zuckerberg could not have been deceived, Facebook certainly could have. *Pendergraft* forecloses that argument, but it's not binding on this Court.

Next, the government suggests that Ceglia intended to deceive the judge and jury in his allegedly fraudulent action. I haven't found any cases sustaining a mail and wire fraud conviction for attempting to deceive a judge or a jury.

Third, Ceglia argues that he did not use the mails and wire transmissions "in furtherance" of his fraud, as required by the mail and wire fraud statutes. Taking the allegations in the indictment as true, it certainly appears to me that the government has alleged enough to show that the mail and wire transmissions were in furtherance of Ceglia's allegedly fraudulent scheme.

Finally, Ceglia argues that the First Amendment prohibits this prosecution because it impermissibly restricts spea[ch] and infringes on his right to petition. Insofar as the restriction on speech is concerned, the Supreme Court has made clear in *Illinois ex rel. Madigan v. Telemarketing Associates, Inc.*, 538 U.S. 600 (2003), that the First Amendment does not shield knowingly false statements made as part of a scheme to defraud. The Second Circuit followed that precedent in *United States v. Rybicki*, 354 F.3d 124 ([2d Cir.] 2004) when it echoed that "fraud is not conduct protected by the First Amendment."

Ceglia's argument as to the right to petition the courts is a little more concerning. Both sides seem to agree that the *Noerr-Pennington* doctrine shields litigation activity in a commercial context, except where the litigation is a sham. The government asserts that the litigation is, in fact, a sham and that Ceglia is not entitled to immunity as a result. Ceglia, in return, has urged me to

12

hold a hearing, and I have determined that I am not going to hold such a hearing. It does appear to me that if *Noerr-Pennington* immunity is something I have to determine, it would be more appropriately raised at the end of trial once all the evidence is in. It's inappropriate for me to make factual determinations about the government's evidence at this early stage. Therefore, Ceglia's motion to dismiss the indictment is denied.

(*See* SDNY Docket No. 12-cr-876, Entry 42). The criminal trial is set currently for May 4, 2015. (*Id.*, Minute Entry dated September 15, 2014).

### E.   WDNY Facebook and Holder Actions – March 2014

On March 25, 2014, three weeks after the SDNY district court denied Ceglia's motion to dismiss the indictment, the WDNY district court dismissed both the Facebook Action (*see* A 81, Entry 674) and the Holder Action (SA 10-12).

More specifically regarding the Facebook Action, the WDNY district court adopted the R&R granting the motion to dismiss "in an exercise of the Court's inherent authority on the ground that the purported contract upon which the action is predicated is a fabrication and, alternatively, because of spoliation of evidence." (*See* A 81, Entry 674). The district court also denied the motion for judgment on the pleadings as moot. (*Id.*). Ceglia has filed an

13

appeal from that order which is pending before this Court under Second Circuit Docket No. 14-1365 and is being heard in tandem with the instant case.

Regarding the instant case, the WDNY district court reviewed the procedural history of both the Facebook Action and the Criminal Prosecution and concluded the claims in the Holder Action, "in which plaintiff Ceglia seeks immunity for conduct related to [the Facebook Action] on the basis of his First Amendment and Seventh Amendment rights, and the *Noerr-Pennington* doctrine, to be without merit." (SA 12 (also citing cases affording no constitutional protection to defrauding the public)). The district court also "decline[d] to entertain [Ceglia's] request that the Court adjudicate his challenges to the criminal statutes in the Indictment pending against him in the Southern District of New York because the Court finds he has adequate remedies at law in that District." (*Id.*). Based thereon, the district court granted the motion to dismiss the Holder Action, thereby also denying the motion for a preliminary injunction. (*Id.*). This appeal followed.

14

## ISSUE PRESENTED FOR REVIEW

Where the SDNY district court presiding over the Criminal Prosecution has already denied both a motion to transfer venue to the WDNY, as well as a motion to dismiss the SDNY Indictment, did the WDNY district court err when it denied Ceglia's request to enjoin the prosecution pending in the SDNY?

## SUMMARY OF ARGUMENT

The WDNY district court properly denied Ceglia's motion for a preliminary injunction and declined to enjoin the Criminal Prosecution against him in the SDNY district court as Ceglia had and has adequate remedies of law to challenge the SDNY indictment. Because the SDNY district court has denied Ceglia's motion to dismiss the Criminal Prosecution, and because this Court will have the opportunity to review that matter should the prosecution result in a conviction, Ceglia cannot establish irreparable harm and is not entitled to the unprecedented relief of enjoining his criminal prosecution in a sister-court. The argument bears all the more weight because Ceglia raises in the Holder Action precisely the same arguments that were raised before and

15

rejected by the SDNY district court in connection with the motion to dismiss the Criminal Prosecution.

## ARGUMENT

### The District Court Properly Dismissed the Holder Action

#### A.     Governing Law and Standard of Review

This Court reviews *de novo* the district court's decision to grant a motion to dismiss. *Lo Tes Co., Ltd. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014). In so doing, this Court accepts as true the factual allegations of the complaint, and construes all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff. *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

On a motion to dismiss, courts require "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly,* 550 U.S. at 555.

Where, as here, the relief that a plaintiff seeks either (1) stays governmental action taken in the public interest pursuant to a statutory

16

scheme, or (2) mandates an affirmative action, a plaintiff must demonstrate a "clear" or "substantial" likelihood of success on the merits of his claim. *Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995); *see also Hoblock v. Albany County Bd. Of Elections*, 422 F.3d 77, 96-97 (2d Cir. 2005). Under the rule of abstention as developed by the Supreme Court, a court may only civilly enjoin a criminal prosecution, "when absolutely necessary for [the] protection of constitutional rights," and only "under extraordinary circumstances, where the danger of irreparable loss is both great and immediate." *Younger v. Harris*, 401 U.S. 37, 45 (1971). No such circumstances or danger exist where a criminal defendant may raise their defenses in their prosecution, unless "'it plainly appears that this course would not afford adequate protection.'" *Younger*, 401 U.S. at 45 (*quoting Fenner v. Boykin*, 271 U.S. 240, 243-44 (1926)).

## B. Discussion

Ceglia is seeking the unprecedented relief of having a district court enjoin or dismiss criminal charges pending in another district court sitting in the same Circuit. Ceglia asserts, without citation to any cases or statutes, the claim that "[t]he District Court had the authority to enjoin the ongoing and

17

threatened criminal prosecution of plaintiff." (Ceglia Brief, p. 11). To the contrary, it is a "basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger*, 401 U.S. at 43-44. The *Younger* doctrine has been applied similarly to federal courts asked to enjoin federal criminal prosecutions. *Buczek v. Bruce*, WDNY Docket No. 09-CV-11293, 2011 WL 1894769, at *4 (W.D.N.Y. May 19, 2011) (*citing Miranda v. Gonzalez*, 173 Fed.Appx. 840, 2006 WL 592928 (D.C.Cir. Feb.12, 2006)); *Deaver v. Seymour*, 822 F.2d 66, 69-70 (D.C. Cir. 1987); *Traficant v. United States*, No. 4:02CV188, 2002 WL 553724, at *3 (N.D. Ohio Feb. 1, 2002).

The D.C. Circuit Court in *Deaver v. Seymour*, wrote:

> We have recently recognized that while the *Younger* line of cases constricts federal intervention in state prosecutions, it does not necessarily control a petition for a federal civil injunction to restrain an ongoing federal criminal proceeding. See *Juluke v. Hodel*, 811 F.2d 1553, 1556-57 (D.C.Cir. 1987). **Nevertheless, in no case that we have been able to discover has a federal court enjoined a federal prosecutor's investigation or presentment of an indictment.** Of course, a federal prosecutor typically brings cases only in federal court, thereby affording defendants, after indictment, a federal forum in which to assert their defenses- including those based on the Constitution. Because these defendants are already guaranteed access to a federal court, it is

18

not surprising that subjects of federal investigation have never
gained injunctive relief against federal prosecutors. Moreover, as
the district court noted, Rule 12(b)(1) of the Federal Rules of
Criminal Procedure permits any defendant to raise by motion,
after indictment but before trial, a defense based on "defects in the
institution of the prosecution."

*Deaver*, 822 F.2d at 69; *see also Christoforu v. United States*, 842 F.Supp. 1453,

1456 n.2 (S.D.Fla 1994) ("*Juluke* [*v. Hodel*, 811 F.2d 1553 (D.C. Cir. 1987)]

recognized that a federal court sitting in equity *could* deny equitable relief if

such a denial serves judicial economy or if the plaintiff has an adequate

remedy at law") (emphasis in original). Consequently, there is simply no basis

for the claim that the WDNY district court erred when it declined to insert

itself into a matter well-within the SDNY's jurisdiction. The WDNY district

court's determination not to enjoin the case pending before the SDNY district

court should therefore be affirmed.[8]

---

[8] While the WDNY district court was not presented with an argument
regarding subject matter jurisdiction, it declined to entertain arguments
regarding the propriety of the Criminal Prosecution. The fact that the
government did not raise the issue of subject matter jurisdiction before the
district court does not preclude dismissal on that basis by this Court since this
Court may affirm on any basis which finds support in the record. *United States
v. Yousef*, 327 F.3d 56, 156 (2d Cir. 2003), and Fed. R. Civ. P. 12(h)(3). The
United States, as sovereign, is immune from suit save as it consents to be sued
. . ., and the terms of its consent to be sued in any court define that court's

19

Moreover, Ceglia's brief is stacked with arguments as to the underlying merits of the Facebook Action and the Criminal Prosecution. Given that Ceglia had an adequate remedy to pursue those claims in the context of the Facebook Action and the Criminal Prosecution, those arguments do not provide a basis upon which this Court could find that the WDNY district court erred in its determination not to adjudicate the challenges to the criminal statutes pending against Ceglia in the SDNY.

Regarding the Criminal Prosecution, for example, Ceglia argues that the Criminal Prosecution is barred by the First Amendment which he alleges protects a right to bring the Facebook Action (Ceglia Brief, pp. 16-17), that the *Noerr-Pennington* doctrine and the judicial function exception set forth in 18

---

jurisdiction to entertain the suit.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980), *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (same for federal agencies and officers acting in their official capacities). An exception applies to actions of an officer of the sovereign if those actions "can be regarded as so 'illegal' as to permit a suit for a specific relief against the officer." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 701–02 (1949). Since the SDNY district court denied the motion to dismiss the criminal indictment and found that the Criminal Prosecution could proceed on the charges of mail and wire fraud based on the false claims made in the Facebook Action, there is no basis to find that the Attorney General and the prosecutors acted illegally, must less that their conduct was "so illegal." Accordingly, there was no exception to sovereign immunity.

20

U.S.C. § 1001(b) provide him with immunity from the Criminal Prosecution (*id.*, pp. 17-22, 34-38), and that the criminal indictment is defective on its face and insufficient to establish either mail or wire fraud because he does not have the requisite intent (*id.*, pp. 38-50). Ceglia made these exact arguments in his motion to dismiss the indictment determined by the SDNY district court. (*See* SDNY 12-cr-876, Entry 35). The SDNY district court considered the arguments and rejected them. (*See id.*, Entry 42 (and excerpt set forth, *supra*, at pp. 10-13)). These issues will therefore reach this Court if Ceglia is convicted, when he files a direct appeal from the foreseeable judgment of conviction. However, the fact that his effort to dismiss the indictment before the SDNY district court failed does not provide a basis on which this Court should condone Ceglia's effort at petitioning a sister court to attempt to achieve his goal.

Similarly, Ceglia presents arguments regarding the Facebook Action and its merits. (Ceglia Brief, pp. 23-30 (arguing that the Facebook Action cannot be objectively baseless because of Ceglia's expert proof demonstrating that the purported contract was authentic)). Those arguments, however, are already pending for this Court's consideration under 2d Cir. Docket No. 14-1365, a

21

case being heard in tandem with this case. Simply put, nothing relating to the merits of the Facebook Action would provide a basis on which this Court could find that the WDNY district court erred in declining to enjoin the SDNY Criminal Prosecution. If there is a remedy available to Ceglia regarding the Facebook Action, this Court will determine it in the due course of that appeal. Then, if Ceglia is successful in his appeal from the order dismissing the Facebook Action, any meritorious arguments can be utilized in his defense of the Criminal Prosecution.

In the course of issuing its order to dismiss the Holder Action, the WDNY district court cited its finding that the Facebook Action was a sham. (SA 12). However, regardless of whether the WDNY district court found merit to the Facebook Action, a determination which this Court will shortly make, it did not err in deferring to the SDNY district court regarding the merits of the Criminal Prosecution and dismissing the Holder Action.

Based on the foregoing, nothing set forth in Ceglia's brief at pages 11 through 50 provides a basis on which this Court should find that the district court erred in dismissing the Holder Action in its entirety.

22

The remainder of Ceglia's brief asserts considerations regarding the equities involved, to include his claim of irreparable harm caused by the Criminal Prosecution, that a balancing of equities is in his favor, and that considerations regarding the public interest weigh in his favor. (Ceglia's Brief, pp. 50-56). The analysis regarding irreparable harm wholly ignores the fact that Ceglia has already sought, and received, a determination made by the proper court, that is the SDNY, that there is no basis to dismiss the pending indictment and that all of his arguments will be heard by this Court if and when he files a direct appeal from a judgment of conviction. Thus, the arguments made by Ceglia ignore the reality of the procedural posture of these interrelated cases and provide no basis on which this Court should find that the WDNY district court erred in declining to enjoin the SDNY Criminal Prosecution.[9] It is difficult, if not impossible, to understand Ceglia's persistence with the Holder Action given the ability to litigate all of the issues in both the Facebook Action and the Criminal Prosecution. The merits of each of those

---

[9] Even considering the allegation of irreparable harm set forth in Ceglia's Brief at pp. 50-51, "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, are not by themselves considered irreparable in the special legal sense of the term." *Younger*, 401 U.S. at 46.

23

cases will be determined in the respective due course of each, complete with an opportunity for full review by this Court. Accordingly, nothing set forth in Ceglia's Brief at pages 50 through 56 provides a basis on which this Court should disturb the order issued by the WDNY district court in the Holder Action.

## CONCLUSION

Based on the foregoing, this Court should affirm the district court's order in its entirety.

Dated: December 2, 2014, Buffalo, New York.

Respectfully submitted,

WILLIAM J. HOCHUL, JR.
United States Attorney
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202


*s/Mary E. Fleming*

By: MARY E. FLEMING
Assistant U. S. Attorney
Of counsel

24

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

PAUL D. CEGLIA,

                    Plaintiff-Appellant,          CA # 14-1752-cv

          -v-

ERIC H. HOLDER, JR., as Attorney
General of the United States, et al.,

                    Defendants-Appellees.
_____

    I, MARY E. FLEMING, Assistant United States Attorney for the Western District of New York, hereby certify that the foregoing brief complies with the 14,000 word limitation permitted by the court in that the brief is calculated by the word processing program to contain approximately 6,256 words, exclusive of the Table of Contents, Table of Authorities and Addendum of Statutes and Rules.


                                        *s/Mary E. Fleming*
                                        MARY E. FLEMING
                                        Assistant U.S. Attorney

## <u>AFFIDAVIT OF SERVICE</u>

UNITED STATES COURT OF APPEALS
<u>FOR THE SECOND CIRCUIT</u>

PAUL D. CEGLIA,

                Plaintiff-Appellant,         CA # 14-1752-cv

      -v-

ERIC H. HOLDER, JR., as Attorney
General of the United States, et al.,

                Defendants-Appellees.

---

STATE OF NEW YORK    )
COUNTY OF ERIE        )  ss:
CITY OF BUFFALO       )

      The undersigned hereby certifies that she is an employee of the United States Attorney's Office for the Western District of New York and is a person of such age and discretion as to be competent to serve papers.

      That on December 2, 2014, she mailed the attached **Brief** for Defendants-Appellees, United States of America, by placing an original and five copies in an envelope addressed to the United States Court of Appeals for the Second Circuit and one copy to Plaintiff-Appellant's attorneys, at the places and addresses stated below, and by entrusting said envelope and contents to the United States Postal Service.

      Addressee:  United States Court of Appeals    (1 original and 5 copies)
                      Second Circuit
                      Attn: Catherine O'Hagan-Wolfe
                      Clerk of the Court
                      40 Foley Square
                      New York, New York 10007

Joseph M. Alioto, Esq.       (1 copy, regular mail)
Alioto Law Firm
One Sansome Street, 35th Floor
San Francisco, CA  94104

Gil D. Messina, Esq.         (1 copy, regular mail)
Messina Law Firm, P.C.
961 Holmdel Road
Holmdel, NJ  07733

Further, pursuant to 2d Cir. Local Rule 25.1 (effective January 20, 2010), that on December 2, 2014, she electronically filed the attached **Brief** for Defendants-Appellees United States of America, which had been found to be virus free using Trend Micro, with the Second Circuit Court of Appeals using its CM/ECF.

*s/Laura Rogers*
LAURA ROGERS
Legal Assistant

Sworn to before me this
2nd day of December, 2014

*Monica J. Richards*
**MONICA J. RICHARDS**
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 11-25-2018