*PAUL D. CEGLIA v. ERIC H. HOLDER, JR., et al.*

*14-1752-cv*

# EXHIBIT A

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

## MOTION INFORMATION STATEMENT

**Docket Number(s)**: 15-628                                         Caption [use short title]

**Motion for:** Dismissal of Interlocutory Appeal

United States v. Paul Ceglia, No. 15-628

Set forth below precise, complete statement of relief sought:

The Goverment moves to dismiss an interlocutory

appeal of a motion to dismiss on fugitive

disentitlement grounds and for lack of jurisdiction

**MOVING PARTY:** United States of America          **OPPOSING PARTY:** Paul Ceglia

☐ Plaintiff          ☐ Defendant
☐ Appellant/Petitioner     ☑ Appellee/Respondent

**MOVING ATTORNEY:** Preet Bharara, U.S. Attorney, SDNY     **OPPOSING ATTORNEY:** Gil D. Messina

[name of attorney, with firm, address, phone number and e-mail]

By: Alexander Wilson, Assistant U.S. Attorney          MESSINA LAW FIRM, P.C.
One St. Andrew's Plaza, New York, New York 10007     961 Holmdel Road, Holmdel, NJ 07733
(212) 637-2453                                         (732) 332-9300
E-mail: alexander.wilson@usdoj.gov                    gmessina@messinalawfirm.com

Court-Judge/Agency appealed from: Vernon S. Broderick, United States District Judge

**Please check appropriate boxes:**

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes ☐ No (explain): _____

Has request for relief been made below?     ☐ Yes ☐ No
Has this relief been previously sought in this Court?  ☐ Yes ☐ No
Requested return date and explanation of emergency: _____

Opposing counsel's position on motion:
☐ Unopposed ☐ Opposed ☑ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☐ No ☑ Don't Know

Is oral argument on motion requested?     ☐ Yes ☑ No  (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?     ☐ Yes ☑ No  If yes, enter date: _____

**Signature of Moving Attorney:**
/s/ Alexander Wilson          **Date:** March 11, 2015     Service by: ☑ CM/ECF     ☐ Other [Attach proof of service]

---

## ORDER

**IT IS HEREBY ORDERED THAT** the motion is **GRANTED  DENIED**.

**FOR THE COURT:**
CATHERINE O'HAGAN WOLFE, Clerk of Court

Date: _____          By: _____

**Form T-1080** (rev. 7-12)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

            Appellee,

              - v.-

PAUL CEGLIA,

            Defendant-Appellant.

- - - - - - - - - - - - - - - - X

                      **AFFIRMATION**

                      No. 15-628

STATE OF NEW YORK          )
COUNTY OF NEW YORK       :   ss.:
SOUTHERN DISTRICT OF NEW YORK )

      ALEXANDER WILSON, pursuant to Title 28, United States Code, Section 1746, hereby affirms under penalty of perjury:

      1.    I am an Assistant United States Attorney in the Office of Preet Bharara, United States Attorney for the Southern District of New York, and am one of the Assistant United States Attorneys representing the Government on this appeal.

      2.    Appellant Paul Ceglia has appealed from an interlocutory order entered in the United States District Court for the Southern District of New York, by the Honorable Vernon S. Broderick, United States District Judge, denying Ceglia's motion to dismiss the indictment currently pending against him.  Trial in the case is scheduled to begin on May 4, 2015.

      3.    At some point this past weekend, Ceglia –- whose pretrial release conditions included electronic monitoring as a

condition of his release -- jumped bail. Before doing so, Ceglia removed his GPS bracelet and attached it to a motorized contraption of his own creation, in order to give the appearance that he was still present and moving within his home. Thus, it is clear that Ceglia has deliberately become a fugitive. He has not been located.

4.    I respectfully submit this affirmation in support of the Government's motion to dismiss the defendant's interlocutory appeal (1) based on the fugitive disentitlement doctrine, and (2) for lack of appellate jurisdiction.

### PRELIMINARY STATEMENT

5.    On November 26, 2012, Indictment 12 Cr. 876 (ALC) was filed charging Ceglia with one count of mail fraud, in violation of 18 U.S.C. § 1341, and one count of wire fraud, in violation of 18 U.S.C. § 1343. Both charges arise from Ceglia's efforts to devise and carry out a scheme to defraud by filing a lawsuit against Facebook, Inc. and its Chief Executive Officer, Mark Zuckerberg, based on a fraudulent contract purportedly granting Ceglia 50% ownership of Facebook. The case was initially assigned to the Honorable Andrew L. Carter, Jr., United States District Judge.

6.    On or about November 27, 2013, the defendant moved to dismiss the Indictment on the grounds, *inter alia*, that the Indictment violated Ceglia's First Amendment right to petition the government for redress of grievances and that he was entitled to immunity under the *Noerr-Pennington* doctrine for his filing of the

lawsuit against Facebook and Zuckerberg.  After briefing and oral argument, Judge Carter denied Ceglia's motion.  Ceglia did not appeal Judge Carter's ruling.

7.      On December 17, 2014, Ceglia filed another motion seeking to dismiss the Indictment on the same First Amendment and *Noerr-Pennington* grounds rejected by Judge Carter.  On January 8, 2015, the case was reassigned to Judge Broderick, who held oral argument on Ceglia's motion on January 30, 2015.[1]  On February 9, 2015, Judge Broderick issued an order (the "Order") denying Ceglia's motion to dismiss.

8.      On February 23, 2015, Ceglia filed a notice of appeal of the Order.

9.      At some point on or about March 7 or March 8, 2015, Ceglia -- whose conditions of pretrial release included electronic monitoring as a condition of pretrial release -- jumped bail and became a fugitive.

10.      Trial is scheduled to begin on May 4, 2015.

---

[1] Because Ceglia's motion was based on the same grounds as the prior motion to dismiss, the District Court correctly found it to be, in substance, an untimely motion for reconsideration of the denial of the prior motion to dismiss.  For convenience, however, the motion is described simply as a motion to dismiss throughout this Affirmation.

3

**ARGUMENT**

**Ceglia's Appeal Should Be Dismissed Pursuant to the Fugitive Disentitlement Doctrine**

**A.    Relevant Facts**

11.    Ceglia's bail conditions, which were most recently modified on September 17, 2014, included the following terms: a $250,000 personal recognizance bond, secured by certain real property and co-signed by his father, mother and brother, and pretrial services supervision with GPS-enabled electronic monitoring. (*See* Tr., October 31, 2012, at 30-36; Ex. A, hereto, and subsequently modified as reflected in Docket Entries 14, 16, 26, 32, 55 and 72 of Case No. 12 Cr. 876 (VSB)).

12.    On or about March 6, 2015, a pretrial services officer (the "Officer") assigned to monitor Ceglia electronically was alerted that the GPS bracelet that Ceglia was required to wear was not functioning properly.  The Officer spoke with Ceglia by telephone, and Ceglia reported that the bracelet had been damaged in a fall, but Ceglia assured the officer that the bracelet was working, and sent a photograph of the bracelet purportedly on his ankle. The Officer received subsequent alerts from the bracelet indicating it was functioning properly.

13.    The Officer was alerted again on or about the evening of March 7, 2015 that there was no motion on the bracelet, but that the bracelet was in the immediate vicinity of Ceglia's home.  The

4

bracelet continued to indicate no motion until approximately 8 a.m. on March 8, 2015, when it indicated it was charging for approximately 30 minutes. Through the evening on or about March 7, 2015 and continuing until the morning on or about March 8, 2015, the Officer repeatedly attempted to contact Ceglia by telephone and through the bracelet itself, but received no response. Local police visited Ceglia's home on or about March 8, 2015 and received no response when they knocked at the door.

14. Based on the foregoing, the Officer sought and received a bench warrant for Ceglia's arrest for failure to comply with the conditions of his pretrial release. (Ex. B, hereto). In the evening on or about March 8, 2015, officers from the United States Marshals Service Fugitive Task Force ("Task Force Officers") traveled to Ceglia's home to attempt to execute the arrest warrant. At this time, the bracelet continued to indicate that it was in the vicinity of Ceglia's home.

15. Because the Task Force Officers had been informed that Ceglia's GPS bracelet was indicating that he was at his home, and because they could hear a mechanical noise coming from inside the home, the Task Force Officers forced entry into the home, both to check on the welfare on anyone inside, and to execute the arrest warrant. While conducting a security sweep of the home, the Task Force Officers observed, among other things, a hand-made contraption connected to the ceiling, from which Ceglia's GPS bracelet was

5

hanging.  The purpose of the contraption appeared to be to keep the bracelet in motion using a stick connected to a motor that would rotate or swing the bracelet.  A photograph of the contraption is attached as Exhibit C.  Although the motor was making noise and appeared to be running, part of the contraption was disconnected, and was not in motion when observed by the Task Force Officers.  They also observed a timer connected to the bracelet's charger, a photograph of which is attached as Exhibit D.  The bracelet reports to pretrial services when it is charging, and the timer's purpose was apparently to mimic the report that would have been sent if Ceglia had been present and had plugged the charger in.

16.    On March 9, 2015, Ceglia was ordered by Judge Broderick to appear personally at a court conference scheduled for March 10, 2015 at 11 a.m.  Ceglia failed to appear at that conference, and Judge Broderick subsequently revoked Ceglia's bail.

**B.    Applicable Law**

17.    "It has been settled for well over a century that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal." *United States* v. *Zedner*, 555 F.3d 68, 75 (2d Cir. 2008). Indeed, the Supreme Court has "noted . . . its 'consistent and unequivocal approval of dismissal as an appropriate sanction when a prisoner is a fugitive during the ongoing appellate process.'" *Id*. (quoting *Ortega-Rodriguez* v. *United States*, 507 U.S. 234, 239 (1993))

6

(internal alterations omitted).

18.   This Court has identified four discrete "justifications for deciding 'to dismiss a criminal appeal pursuant to the fugitive disentitlement doctrine.'" *United States* v. *Zedner*, 555 F.3d at 77 (quoting *United States* v. *Awadalla*, 357 F.3d 243, 245 (2d Cir. 2004)).   Those justifications are "'1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape.'" *Zedner*, 555 F.3d at 77 (quoting *United States* v. *Awadalla*, 357 F.3d at 245).

19.   Where a defendant flees *during* his own appeal -- as opposed to fleeing at some earlier stage in the litigation that might, nonetheless, have consequences for the appeal -- each of the foregoing factors is satisfied and militates in favor of dismissal. *Zedner*, 555 F.3d at 77 ("In the context of an appeal by a fugitive who is challenging his criminal conviction, each of the factors . . . summarized in *Awadalla* is an independently sufficient basis on which to apply the fugitive disentitlement doctrine and dismiss the appeal.").   Moreover, although this Court has "discretion to dismiss the appeal either with prejudice or without prejudice to reinstatement if the defendant returns to custody within a certain time," dismissal with prejudice is generally preferable because

7

"'any other course of action would dilute the sanction imposed for flouting the judicial process and reduce the deterrent effect of that sanction.'" *Zedner*, 555 F.3d at 80 (quoting *Awadalla*, 357 F.3d at 249-50). Put simply, "'a defendant who jumps bail is no longer entitled to draw on the resources of an appellate court, and, therefore, should not be accorded additional time to return to custody before his appeal is dismissed.'" *Zedner*, 555 F.3d at 80 (quoting *Awadalla*, 357 F.3d at 249).

### C. Discussion

20. Ceglia's appeal should be dismissed with prejudice. Because he has fled during the pendency of his own appeal, every one of the four relevant factors weighs in favor of dismissal with prejudice. First, Ceglia's disappearance means that an affirmance of the Order by this Court would be effectively unenforceable, since affirmance would mean that the case should proceed to trial, and -- so long as Ceglia remains a fugitive -- the case cannot proceed to trial. Second, Ceglia's conduct warrants a penalty for flouting the judicial process. Third, similarly, dismissal is warranted to discourage deliberate, premeditated flight like Ceglia's. Finally, the Government is prejudiced by Ceglia's flight. This interlocutory appeal was already one that seemingly would need to be resolved on an expedited basis in order to permit trial to begin on May 4, as scheduled, but Ceglia's absence now makes it unlikely that the merits

of his appeal can be resolved at all, much less on an expedited basis.[2]

21. Finally, it is worth noting that the procedural posture of this case makes dismissal with prejudice somewhat less consequential to Ceglia, and therefore an easier remedy for this Court to order, than would be the case if this were an appeal from a final judgment of conviction. Ceglia has appealed from an order denying his motion to dismiss the indictment. As explained in the next section, this Court does not have jurisdiction over an appeal from such a non-final order. But even if this Court did have jurisdiction, the remedy that Ceglia seeks -- dismissal of the indictment -- is one that he could just as easily pursue after final judgment if he is eventually apprehended and convicted. In other words, dismissing Ceglia's current appeal will punish him by denying him an opportunity (to which he is not entitled, in any event) to have this Court review his challenge to the indictment before trial. But dismissing this appeal will not necessarily deny Ceglia the opportunity to raise the same challenge to the indictment in a

---

[2] To be sure, even absent Ceglia's flight, the Government's position is that the merits could not be reached because, as explained in the next section, this Court lacks jurisdiction over an appeal from the Order. Dismissal for lack of jurisdiction, like dismissal pursuant to the fugitive disentitlement doctrine, would not need to await Ceglia's return, since this Court at all times has its own obligation to satisfy itself that jurisdiction exists. *See Bender* v. *Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction . . . even though the parties are prepared to concede it.") (internal quotation marks omitted).

post-judgment appeal. Thus, the result of dismissal is that Ceglia, by his flight, will have forfeited his attempt to avoid a trial, not necessarily the opportunity ultimately to avoid conviction.[3]

22.    Accordingly, the Court should dismiss this appeal with prejudice pursuant to the fugitive disentitlement doctrine.

### Ceglia's Appeal Should Be Dismissed for Lack of Jurisdiction

### A.    Applicable Law

23.    Title 28, United States Code, Section 1291 expressly limits the jurisdiction of Courts of Appeals to "final decisions of the district courts." 28 U.S.C. § 1291. "This final judgment rule requires that a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits.  In a criminal case, the rule prohibits appellate review until conviction and imposition of sentence." *Flanagan* v. *United States*, 465 U.S. 259, 263 (1984) (internal citations and quotation marks omitted). As the Supreme Court has "long held," the "policy of Congress embodied in this statute is inimical to piecemeal appellate review of trial court decisions which do not terminate the litigation, and . . . this policy is at its strongest in the field of criminal law." *United States* v. *Hollywood Motor Car Co.*, 458 U.S. 263, 265 (1982); *see also*, *e.g.*, *Flanagan* v. *United States*, 465 U.S. at 270 (noting "overriding

---

[3] Whether Ceglia's flight might also disentitle him from bringing a post-judgment appeal on this or any other issue is not a question the Court needs to decide in resolving this motion, and likely turns on how protracted Ceglia's absence ultimately proves to be.

policies against interlocutory review in criminal cases" and that "exceptions to the final judgment rule in criminal cases are rare").

24. There is a limited exception to this rule that permits immediate appeal from collateral orders. *See Coopers & Lybrand* v. *Livesay*, 437 U.S. 463, 468 (1978) (citing *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949)). To fall within the "small class" of decisions that constitute immediately appealable collateral orders, the decision must "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Van Cauwenberghe* v. *Biard*, 486 U.S. 517, 522 (1988) (internal quotation marks omitted).

25. As to the third criterion, "[a]n order is effectively unreviewable where the order at issue involves an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." *United States* v. *Punn*, 737 F.3d 1, 5 (2d Cir. 2013) (quoting *Lauro Lines s.r.l.* v. *Chasser*, 490 U.S. 495, 498-99 (1989)) (internal quotation marks omitted). A ruling that is burdensome to a party "in ways that are only imperfectly reparable by appellate reversal of a final district court judgment is not sufficient." *Id.* (quoting *Mohawk Indus., Inc.* v. *Carpenter*, 558 U.S. 100, 107 (2009)) (internal quotation marks omitted).

26. The Supreme Court has made clear that the collateral order exception should be "interpreted . . . with the utmost

strictness in criminal cases." *Midland Asphalt Corp.* v. *United States*, 489 U.S. 794, 799 (1989) (internal quotation marks omitted). Orders denying motions to dismiss an indictment are generally not subject to interlocutory appeal. *See*, *e.g.*, *Midland Asphalt Corp.* v. *United States*, 489 U.S. 794 (violation of grand jury secrecy); *United States* v. *Hollywood Motor Car Co.*, 458 U.S. 263 (vindictive prosecution); *United States* v. *MacDonald*, 435 U.S. 850 (1978) (Sixth Amendment right to a speedy trial); *United States* v. *Ecker*, 232 F.3d 348 (2d Cir. 2000)(breach of plea agreement); *United States* v. *Weiss*, 7 F.3d 1088 (2d Cir. 1993)(statute of limitations); *United States* v. *Levy*, 947 F.2d 1032 (2d Cir. 1991)(lack of jurisdiction). The exceptions to that general rule are motions to dismiss based on the Double Jeopardy Clause or Speech and Debate Clause, which provide a "right not to be tried," rather than merely "a right whose remedy requires the dismissal of charges." *Midland Asphalt Corp.*, 489 U.S. at 801 (*quoting Hollywood Motor Car Co.*, 458 U.S. at 269). Such a right not to be tried must "rest[] upon an explicit statutory or constitutional guarantee that trial will not occur." *Id.*

**B. Discussion**

27. The Order, as a denial of a pre-trial motion to dismiss an indictment, is not a final judgment or a collateral order. Nor does it meet either the second or third criteria for identifying immediately appealable collateral orders.

28. The *Noerr-Pennington* doctrine, on which Ceglia's

motion relied, generally provides for immunity from civil liability based on a party's litigation activity, unless the litigation is a "sham."[4]  *See Prof'l Real Estate Investors, Inc.* v. *Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56-60 (1993).  The *Noerr-Pennington* doctrine does not, however, provide for immunity from standing trial. Indeed, in *California Motor Transport Co.* v. *Trucking Unlimited*, the Supreme Court expressly overturned a grant of summary judgment and remanded the question of *Noerr-Pennington* immunity "for trial."  404 U.S. 508, 515-516 (1972).  Accordingly, it represents, at most, "a right whose remedy requires the dismissal of charges," and not a "right not to be tried." *Midland Asphalt Corp.*, 489 U.S. at 801. Certainly, *Noerr-Pennington* immunity does not represent any "explicit statutory or constitutional guarantee that trial will not occur." *Id.*

29.  Therefore, *Noerr-Pennington* immunity is indistinguishable from the long list of bases for dismissal of an indictment that have been found to not to qualify for exception from the final judgment rule.  To the extent it applies in the criminal context at all, the determination of *Noerr-Pennington* immunity is integral to the merits of the case, not entirely separate from them. Nor is it effectively unreviewable on appeal from a final judgment.

---

[4]  The Government is not aware of any authority addressing whether the *Noerr-Pennington* doctrine should apply to prosecutions for violation of criminal statutes.  The District Court assumed, without deciding, that the doctrine applied for purposes of the Order.

Even if the *Noerr-Pennington* doctrine entitled Ceglia to dismissal of the Indictment, which it does not, his rights can be readily vindicated through a post-judgment appeal. Accordingly, this Court does not have jurisdiction to review the Order and Ceglia's appeal should be dismissed.

30. Thus, because the District Court's decision is neither a final judgment nor a collateral order, this Court should dismiss the defendant's appeal based on lack of appellate jurisdiction.

**CONCLUSION**

31. For the foregoing reasons, Ceglia's appeal should be dismissed (i) pursuant to the fugitive disentitlement doctrine, or (ii) for lack of jurisdiction.


Dated:     New York, New York
           March 11, 2015


                              /s/ *Alexander Wilson*
                              ALEXANDER WILSON
                              Assistant United States Attorney
                              Telephone: (212)637-2453

# Exhibit A

1

CAVUCEGC
1   UNITED STATES DISTRICT COURT
1   SOUTHERN DISTRICT OF NEW YORK
2   --------------------------------x
2
3   UNITED STATES OF AMERICA
3
4               v.                          12 MJ 2842
4
5   PAUL CEGLIA,
5
6               Defendant.
6
7   --------------------------------x
7
8                                    New York, N.Y.
8                                    October 31, 2012
9                                    11:20 a.m.
10
11  Before:
11
12                    HON. COLLEEN McMAHON
12
13                                    District Judge
13
14                    APPEARANCES
14
15  PREET BHARARA
15      United States Attorney for the
16      Southern District of New York
16  BY:  JANIS M. ECHENBERG
17       CHRISTOPHER D. FREY
17       Assistant United States Attorneys
18
18  DEFENDANT (Via Telephone)
19
19  FEDERAL DEFENDERS OF NEW YORK
20      Attorneys for Defendant
20  BY:  DAVID E. PATTON
21       -and-
21  DANIEL GREENE (Via Telephone)
22
22  ALSO PRESENT
23      Douglas Veatch, Postal Inspector
23      AARON MANGO, Assistant United States Attorney (Via
24         Telephone)
24      Linda Lewis, Deputy Clerk (Via Telephone)
25
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

CAVUCEGC

1  probation department in connection with the preparation of the
2  report -- which I very much don't appreciate -- all of those
3  things augur for bail substantially in excess of $21,000.  I
4  see no moral suasion in that bail -- none whatsoever.
5           I am prepared to admit the defendant to bail with
6  substantial modifications.
7           I am prepared to admit him to bail on a $250,000
8  recognizance bond signed by three substantially responsible
9  persons acceptable to the Court and secured with all of his
10 parents' real estate and with the equity in his own real
11 estate.
12          Additionally, electronic monitoring with strict
13 probation supervision and complete probation access to his
14 computers, to any computers used by the defendant at home or at
15 his place of business.  I say "used by," "not owned by."
16          And I am not sure whether probation can come up with
17 appropriate filtration software to prohibit certain kinds of
18 activity.  I don't know if this is the kind of case where that
19 is even possible.  This is not like a kiddie porn case, but the
20 defendant stands accused of serious crimes for which the
21 government has substantial evidence of his use and misuse of
22 computers.  I appreciate that there may be two sides to the
23 story, but the government's evidence is strong and I do not
24 discount it simply because the defendant has someone who is
25 willing to challenge the government's evidence.

CAVUCEGC

```
 1              Electronic monitoring at the defendant's expense with
 2     travel restricted to the Western District of New York within a
 3     15-mile radius of the defendant's home.
 4              Have we gotten to the Canadian border yet?
 5              MR. GREENE:  No, your Honor.  That is well south of
 6     Rochester.
 7              THE COURT:  That's what I thought.
 8              And for trips to visit pretrial in, I assume,
 9     Rochester -- I assume that's where he would be supervised,
10     given where Wellsville is located -- and to the Southern
11     District of New York for court appearances.
12              A border watch should, of course, be put out for the
13     defendant.
14              And all travel documents surrendered, whether of U.S.
15     or Irish provenance.
16              I am somewhat concerned about the aspect of the
17     magistrate judge's order that demanded the surrender of travel
18     documents for his wife and children.  They don't stand accused
19     of anything.  I am not sure why that was part of the order.  I
20     am not sure if that was legal.
21              Can anybody enlighten me on this?
22              MR. PATTON:  I have never heard of that as a condition
23     in this district, your Honor.
24              MR. GREENE:  Your Honor, I believe that was at the
25     suggestion that, if Mr. Ceglia were to flee, he would flee with
```

CAVUCEGC

1  his family; they were also traveling with him through 2011 and
2  2012.
3          THE COURT:  That I understand.  I am prepared to let
4  that portion of the order stand until such time as somebody
5  representing Mr. Ceglia may wish to challenge the legality of
6  that part of order because it is totally unknown to me, but I
7  am going to guess that Judge McCarthy knew what he was doing
8  and I am prepared to let that portion of the order stand.
9          MR. PATTON:  Judge, just for the record, I will object
10  to that condition.
11          THE COURT:  Thank you, Mr. Patton.  I am perfectly
12  willing to review it if you are ever able to get power and can
13  do some research, but I am adamant about the $250,000 personal
14  recognizance bond, the co-signers and the real estate security
15  coming from his parents.
16          I want Mr. Ceglia -- sir, you need to understand
17  something about me.  I have no compunction about taking
18  people's parents' homes away and heaving them homeless on the
19  street -- none whatsoever.
20          THE DEFENDANT:  I understand, your Honor and I will
21  take every court date very seriously.  I appreciate it.
22          MR. PATTON:  Your Honor, on the co-signers, could I
23  ask, just so that we can expedite this process for them
24  upstate, that the co-signers be allowed to be his parents and
25  his wife, and then we can just designate those?

Case 1:12-cv-08100-JPO Document 89-2 Filed 12/16/14 Page 22 of 31

CAVUCEGC
```
 1              MR. GREENE:  Could that be repeated just louder,
 2    please?
 3              MR. PATTON:  I am just making a request as to the
 4    co-signers, that the three co-signers that we can just
 5    designate them now as his parents and his wife.
 6              THE COURT:  As long as they are acceptable to the
 7    government.  Since the parents are going to have to put all of
 8    their real estate up, I cannot see any particular reason why
 9    the parents should not be co-signers.  That will take care of
10    the rest of their assets.
11              It is not clear to me that his wife has any assets
12    that he does not.
13              MR. PATTON:  I don't know that either, your Honor, but
14    she would certainly be on the hook if he were to flee.
15              MR. GREENE:  Judge, she is co-owner of the property
16    with Mr. Ceglia.
17              THE COURT:  I think it should be a third independent
18    person.
19              MS. ECHENBERG:  Your Honor, I would just note that at
20    least the defendant's mother is also an Irish citizen, so there
21    is the possibility that the entire family could flee.  They
22    have all spent a significant part of the last year --
23              THE COURT:  As I said I am perfectly happy to bankrupt
24    them.  I am perfectly happy to take their real estate and to
25    sell it, if that is what they choose, but I don't think that
```

CAVUCEGC
1    the defendant's wife should be the third co-signer.  The
2    parents I will accept as co-signers, but the third person
3    should be an independent individual with some net worth.  It
4    would expedite matters and we could call upon the good offices
5    of the folks in Western District to, in the first instance,
6    pass on the propriety of the co-signers and send their
7    recommendation down here, that would be helpful.
8            I am quite serious with the restriction in terms of
9    mileage on the electronic monitoring.
10           MS. ECHENBERG:  Your Honor, I am not sure there is any
11   way to enforce that 15-mile radius.  I believe if he has a
12   bracelet, it is tied to something in his home.  If he leaves
13   his home, the bracelet alerts.
14           THE COURT:  I understand that.  I am restricting
15   travel to 15 miles.
16           MS. ECHENBERG:  Even approved travel?
17           THE COURT:  Approved travel.
18           MS. ECHENBERG:  So he is in his home --
19           THE COURT:  He is in his home.  He is, in effect, a
20   prisoner in his home when he is on electronic monitoring.  And
21   I am not willing to release him until the electronic monitoring
22   is set up and until we have full satisfaction of the financial
23   conditions.  We do have to arrange for Mr. Ceglia to appear
24   down here.  I don't know how long it will take for the
25   financial conditions to be satisfied.

CAVUCEGC

```
 1              All of the other standard conditions of bail in the
 2    Southern District of New York other than travel in the Southern
 3    and Eastern Districts -- that is not a condition here -- the
 4    only time he needs to be in the Southern District is when he is
 5    here for court and he doesn't need to go to the Eastern
 6    District to get to this courthouse from Wellsville, New York.
 7              Mr. O'Neil, do we have a list of the other conditions?
 8    We rarely impose bail.
 9              MS. ECHENBERG:  Your Honor, I think this is obvious,
10    but are you imposing strict pretrial services supervision?
11              THE COURT:  Strict pretrial supervision.  That means
12    frequent visits to and from your pretrial services officer.
13              And, Mr. Ceglia, let me explain how electronic
14    monitoring works.
15              You will have a bracelet, and you have to have in your
16    home a landline telephone that does not have call forwarding,
17    call waiting or any access to a modem, and that number will be
18    called from time to time by your pretrial services officer.  If
19    you are not there to answer the telephone, a warrant for your
20    arrest will issue promptly.
21              THE DEFENDANT:  OK, your Honor.  Does that mean that
22    if my landline has call forwarding --
23              THE COURT:  It means it is going to have to change.
24    It cannot have call waiting, call forwarding, caller ID.  You
25    may have to set up a separate landline for this.
```

CAVUCEGC

```
 1              THE DEFENDANT:  Technically, the phone shouldn't be
 2      used for anything but calling the officers?
 3              THE COURT:  It gets set up with pretrial services, but
 4      the conditions are no call forwarding, no caller ID, no call
 5      waiting and no modem, and that is true of every electronic
 6      monitoring that we order in this district.  That's so that
 7      nobody one can look at the phone and know that it is the
 8      pretrial service officer that is calling.  No one can forward a
 9      call so that you can be at another location.  In other words,
10      the idea is, if you are not there to pick up the phone, you are
11      in trouble.
12              I need to find the rest of the standard conditions.
13              MS. ECHENBERG:  I think that the only one that hasn't
14      been noted is no new travel applications.
15              THE COURT:  No new applications anywhere on the planet
16      for new travel documents.
17              MS. ECHENBERG:  I think that we have covered the other
18      standard conditions, your Honor.
19              THE COURT:  I have no idea whether I will ultimately
20      be the judge in this case.  I am here sitting in Part 1 on
21      review.  It will get wheeled out eventually to someone.
22              MS. ECHENBERG:  On that note, your Honor, I believe
23      that we need to set a preliminary hearing date because this was
24      an arrest on a complaint.
25              MR. GREENE:  Your Honor, if I can notify the Court --
```

# Exhibit B

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT
### for the

Western District of New York

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Paul Ceglia | ) | Case No.   1:12M1171 |
| | ) | |
| *Defendant* | ) | |

## ARREST WARRANT

To:    Any authorized law enforcement officer

   **YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   Paul Ceglia
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☐ Complaint

☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ■ Order of the Court

This offense is briefly described as follows:

Bail Violations

Date:   2/8/15

_____
*Issuing officer's signature*

City and state:   Buffalo, New York

JEREMIAH J. MCCARTHY
*Printed name and title*

U.S.M.J.

| Return |
|---|
| This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____                                _____<br>                                                            *Arresting officer's signature*<br><br>                                                            _____<br>                                                            *Printed name and title* |

# Exhibit C

Case 4:17-cr-00029-DN Document 89-2 Filed 02/15/18 Page 29 of 31



# Exhibit D

